**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

Case No. 3:24-cv-03058-K-BW

**BRAD DAVIS,**

    *Plaintiff,*

v.

**NEXT BRIDGE HYDROCARBONS,**
**INC., *et al.,***

    *Defendants.*

_____/

**PLAINTIFF'S MOTION TO STAY THE PROCEEDINGS AND/OR, IN THE**
**ALTERNATIVE, MOTIN FOR EXTENSION OF TIME**

**COMES NOW**, *pro se* plaintiff, BRAD DAVIS ("***Plaintiff***" or "***Davis***") in the above-styled cause (this "***Action***" or "***Case***"), and respectfully moves this Honorable Court to grant a stay of the proceedings (the "***Motion to Stay***"), and/or, alternative, extend the time to effect service (the "***Motion for Extension of Time***") pursuant to a number of persuasive and/or binding authorities (collectively, this "***Motion***"), and, in support thereof, Davis states as follows:

**PRELIMINARY STATEMENT**

*Davids v. Goliaths.* Plaintiff, together with several other similarly-situated *pro se* plaintiffs currently engaged in ongoing litigation (collectively, the "***MMLTP Matters***") , have extremely limited resources while their well-pocketed adversaries have armies of lawyers doing their bidding for them. To make things worse, these adversaries have been aided by, and continue to get help, from government actors with virtually unlimited resources.[1]

---

[1] These actors include the Department of Justice (the "***DOJ***"), the Securities and Exchange Commission (the "***SEC***") and the Federal Bureau of Investigation (the "***FBI***") as well as the quasi-government market regulator, the Financial Regulatory Industry Authority ("***FINRA***").

28    **I.    INTRODUCTION**

29        Plaintiff's statute of limitations concerns. In 1995, the Private Securities Litigation Reform

30    Act ("***PSLRA***") was enacted, and later, in 2002, amended by the Sarbanes-Oxley Act ("***SOX***"),

31    which jointly provide two key statute-of-limitations periods governing actions that involve

32    securities and allegations of fraud, as the Supreme Court of the United States has explained:

33        In 2002, when Congress enacted the present limitations statute, it repeated *Lampf's*
34        critical language. The statute says that an action based on fraud "may be brought
35        not later than the earlier of . . . *2 years after the discovery of the facts constituting*
36        *the violation*" (or "5 years after such violation"). § 804 of the Sarbanes-Oxley Act,
37        116 Stat. 801, codified at 28 U.S.C. § 1658(b).
38
39    *Merck & Co. v. Reynolds*, 559 U.S. 633, 647, 130 S. Ct. 1784, 1795 (2010) (emphasis in

40    original). Therefore, operating under the genuine belief that the two-year limitation governed his

41    claims and even though he had not yet fully discovered and/or learned of all the material facts

42    concerning this Case despite having as diligently as possible researched all relevant circumstances,

43    factors, events, etc., Plaintiff humbly admits he haphazardly filed the original complaint (the "***First***

44    ***Complaint***") on December 6, 2024. ECF No. 1. As alleged therein, Plaintiff claimed a number of

45    the defendants had grossly violated numerous federal securities laws. *Id.* Later, on December 26,

46    2024, Davis filed an amended complaint through which one of the defendants was dropped (the

47    "***Amended Complaint***"). ECF No. 3.

48        Plaintiff has remained diligent. Thereafter, Plaintiff—using his absolute *best efforts*—has

49    been carefully monitoring numerous state and federal actions filed in various jurisdictions (many

50    of which are pending), and realized that not only do these cases greatly affect this Case but he may

51    also have to amend the Amended Complaint (by moving for leave to amend).

52        Plaintiff's harm is substantial, accruing, and ongoing. Another reason warranting a granting

53    of this Motion is due to Plaintiff's considerable harm, which is ongoing and accruing. Specifically,

54    he was, and continues to be deprived of all notions of *fairness* and *due process* as the result of the

55    egregious misdeeds of many, if not all, the defendants hereto. In this regard, Plaintiff argues he

56    was unfairly denied of his constitutionally-protected right do as he pleased with his fully-owned

57    property (i.e., the preferred securities involved in this Action, and that used to trade under the ticker

58    symbol "***MMTLP***" on the over-the-counter ("***OTC***") market).

59        No prejudice would result to any of the defendants from a granting hereof. First, none of

60    the defendants have yet been served. Second, the lack of service is mostly due to the many related

61    cases that involve substantially-similar material facts, defendants, and/or legal issues as those here.

62        Thus, as this Motion is meritorious, this Honorable should grant it in its *entirety*.

63    **II.    LEGAL STANDARD**

64        **A.  Statute of Limitations**

65        PSLRA as amended by SOX provides a two- and five-year statute of limitations (each, an

66    "***SOL***" and collectively, the "***SOLs***") in filed actions wherein a plaintiff claims/alleges one or

67    several defendants has/have deployed *deceit*, *manipulation*, *fraud*, etc. in transaction(s) concerning

68    securities, and where the relief prayed for is based upon/relates to federal securities laws. *See*

69    *Merck*, supra. The difference between the SOLs (especially when the two-year SOL applies to a

70    particular case, is thoroughly explained in an excellent article published by *National Law Review*-

71    article.[2] In that article, the author (citing as well as quoting to a 2010 opinion issued by the Ninth

72    Circuit of Appeals) explained that "[t]he Court held that a fact is not 'discovered' for purposes of

73    Section 1658(b)'s two-year limitations period until a reasonably diligent plaintiff 'can plead that

74    fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" *Id.*

---

[2] *See* https://natlawreview.com/article/securities-litigation-alert-ninth-circuit-clarifies-standards-governing-statute.

75    **B.  Motions to Stay**

76    Courts have broad discretion in ruling upon motions for a stay of proceedings. For instance,

77    the Western District of Texas provided this highly-guiding passage in an opinion issued in 2016:

78    A stay of a pending matter is within the trial court's wide discretion to control the
79    course of litigation, which includes authority to control the scope and pace of
80    discovery. *In re Ramu Corp.* , 903 F.2d 312, 318 (5th Cir. 1990). This authority
81    stems from a district court's inherent power to "control the disposition of the causes
82    on its docket with economy of time and effort for itself, for counsel, and for
83    litigants." *Landis v. N. Am. Co.* , 299 U.S. 248, 254 , 57 S. Ct. 163 , 81 L. Ed. 153
84    (1936); *see also Dominguez v. Hartford Fin. Servs. Grp., Inc.* , 530 F.Supp.2d 902,
85    905 (S.D. Tex. 2008) (quoting same).
86
87    *Bean v. Alcorta*, 220 F. Supp. 3d 772, 774-75 (W.D. Tex.) (internal citations and quotations

88    in original). Indeed, *Justice* (and therefore *Judicial Economy* as well) would truly be served by a

89    granting of this Motion. *Id.* at 777 ("The interest of the courts is also considered in determining

90    whether to grant a stay") citing *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.* ,

91    571 F.Supp.2d 758, 65 (W.D. Tex. 2008) ("In determining the propriety of a stay, a court can

92    consider its own interests in efficient administration and judicial economy"); *see also Campbell v.*

93    *Eastland*, 307 F.2d 478, 480 (5th Cir. 1962):

94    This civil action for a tax refund is tied in a tight knot with a criminal prosecution
95    for fraud. With patience some formidable knots may be untangled. A famous one
96    was cut. Here, the trial judge attempted to cut away the criminal strand. **We think**
97    that it would have been better to have waited and then patiently untangled the knot.

98    As further discussed below, this Honorable Court, using its broad discretion, should grant

99    the Motion to Stay because argues the full, and fair administration of *Justice* requires it.

100    **C.  Motions for Extension of Time**

101    Under FRCP 4(m) and pursuant to case law, courts are ***obligated*** to extend time to effect

102    service if "good cause" is shown; that being said, they ***may*** nonetheless do so *even* in the absence

103    of *good cause*. The rule provides the following:

104    If a defendant is not served within 90 days after the complaint is filed, the court—
105    on motion or on its own after notice to the plaintiff—must dismiss the action
106    without prejudice against that defendant or **order that service be made within a**
107    **specified time**. But if the plaintiff **shows good cause for the failure, the court**
108    **must extend the time for service for an appropriate period.**
109
110    *Id.* (emphasis added); *see Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("We agree

111    with the majority of circuits that have found that the plain language of rule 4(m) broadens a district

112    court's discretion by allowing it to extend the time for service **even** when a plaintiff fails to show

113    good cause" (emphasis added); *Espinoza v. U.S.*, 52 F.3d 838, 841 (10th Cir. 1995) ("[A] plaintiff

114    who has failed to show 'good cause' for a mandatory extension of time may still be granted a

115    permissible extension of time within the district court's discretion.").

116    Also, requests for extensions of time should be granted, *especially* when *Justice* would be

117    best served as a result. *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129 (11th Cir. 2005).

118    **III.    KEY FACTS OF THIS CASE, AND RELATED ACTIONS**
119
120    **A. The Material Facts In This Case**

121    Throughout 2022 (i.e., on various dates) Plaintiff, along with one of his employees and

122    three of Davis's close family members, acquired around 55,000 shares of MMTLP using their

123    respective online brokerage accounts. While one of his close family members transferred his

124    MMLTP shares to Plaintiff's online brokerage account, the other two together with his employee

125    entered into fully valid and enforceable contracts wherein Plaintiff was agreed amongst them for

126    Plaintiff to act as their fiduciary (or trustee) in their best interests.[3]

127    Plaintiff accumulated this significant position in MMTLP after first having, as diligently

128    as possible, researched numerous market and/or financial reports, and other materials/information

---

[3] Thus, and at all material times, Plaintiff should be considered the rightful owner of the 55,000
MMTLP (for ease of reference and collectively, "***Plaintiff's Shares***" or the "***Shares***"). Likewise,
the terms "***Plaintiff***" and "***Davis***" include these four individuals.

129    he either obtained by himself or was provided with from various sources that, at the time, appeared

130    to be credible to him.

131    Most of the materials/information provided by these sources came from Torchlight Energy

132    Resources, Inc. ("***Torchlight***"), Metamaterial, Inc. ("***Metamaterial***"), and defendant Next Bridge

133    Hydrocarbons, Inc. ("***Next Bridge***").

134    In fact, MMLTP securities were created in mid-June of 2021 as a result of a corporpate

135    merger between Torch and Meta, and thereafter, through a number of various corporate

136    transactions involving multiple entities (many of which were either approved by the SEC and/or

137    noticed to FINRA) that mostly occurred in 2022 (but especially towards the end of the year) they

138    were scheduled to convert into non-tradeable common shares of Next Bridge (collectively, the

139    "***Process***").

140    Importantly, the entities referenced in the preceding paragraph—private as well as public

141    market participants, such as individual traders/brokers, clearing firms, broker-dealers, exchanges,

142    research firms—were all *deeply* involved, and thus had skin in the game throughout the Process.

143    Also, the purported, **self-touting** guardians/protectors—the SEC and FINRA—of the

144    markets *and* retail investors (like Plaintiff)—that are charged with great federal enforcement

145    powers were closely *monitoring*, and *scrutinizing* the Process.

146    The facts from the preceding paragraph became public only through painstaking efforts

147    (i.e., FOIA requests), which are collectively referred to herein as the "***FOIA Facts***".

148    Imperatively, the FOIA Facts exposed the SEC and FINRA as dishonest because it became

149    clear FINRA ***and*** the SEC were communicating, and monitoring unusual trading activities

150    involving MMTLP as early as November of 2022—well before FINRA imposed the trading halt

151    on MMLTP shares.

152    On December 7, 2022, the Vice President of the *OTC Markets Group*, Jeff Mendl

153    ("***Mendl***"), announced in an interview that the MMLTP ticker symbol would be deleted by FINRA

154    on December 13, 2024. Thus, Mendl was clearly privy to vital information concerning MMTLP

155    as early as December 7, 2022, and this information undoubtedly must have been provided by

156    FINRA, yet FINRA **never** shared this crucial information with Davis.

157    On December 8, 2022, after the OTC market had closed, it has been confirmed that FINRA

158    issued a so-called *UPC Notice* wherein it stated the MMTLP ticker symbol would be ***canceled***.

159    On December 9, 2022, however, *before* the OTC market had even opened, FINRA—

160    **without** proper notice, much less **any** meaningful explanation (in violation of *fairness/due*

161    *process*—decided to snap out of its comatose-like state when it publicly announced having halted

162    trading on all MMTLP shares. This prevented Plaintiff from liquidating, trading, etc. the Shares,

163    and, quite notably, FINRA used the word "deletion" rather than "canceled" in said notice. *Id.*

164    However, FINRA was not *quite* done yet in its efforts to cause harm Plaintiff (and other

165    retail investors) for ultimate benefit of the *Golden Club* wherein, along with the many market

166    actors it is supposed to regulate (but from which it also receive its handsome member fees), is a

167    very special and a **permanent** member because the clichéd *Gravy Train* must never, ever stop

168    running. Thus, on December 13, 2024, FINRA decided to delete MMTLP altogether as a ticker on

169    the OTC market ***despite*** Meta had, only four days earlier, submitted a filing[4] with the State of

170    Nevada in which it made it made clear it was withdrawing the MMTLP ticker symbol, effective

171    December 14, 2022, at 2:00pm PT (i.e., after the markets had closed), as shown below:

---

[4] *See*
https://www.sec.gov/Archives/edgar/data/1431959/000119312522305648/d433696dex332.htm

| TYPE OR PRINT - USE DARK INK ONLY - DO NOT HIGHLIGHT | |
|---|---|
| **1. Entity information:** | Name of entity:<br>Meta Materials Inc.<br><br>Entity or Nevada Business Identification Number (NVID):   E0768622007-2 |
| **2. Effective date and time:** | For Certificate of Designation or Amendment to Designation Only (Optional)   Date: 12/14/2022    Time: 2:00PM PT<br>(must not be later than 90 days after the certificate is filed) |
| **3. Class or series of stock:** (Certificate of Designation only) | The class or series of stock being designated within this filing: |

172

173           To aptly summarize things, Plaintiff, along with tens of thousands of other retail investors,

174   were not only left as bag holders by FINRA but also placed in a ***void*** with no way out.

175           As a result, on December 6, 2024, instituted this Action as he needed to ensure his claims

176   would not be time-barred under PSRLA as mended by SOX. ECF No. 1. Thereafter, on December

177   26, 2024, amended the First Complaint, and, in connection therewith, dropped one of defendants.

178           Since then, using already-scarce resources, Plaintiff has been weighing his options,

179   obligations, etc.by monitoring several relevant actions filed in several jurisdictions.

180   **B. Material Facts Unearthed From Related Actions**

181           In particular, the following cases have generated a trove of new, important information:

182   **1. *SEC v. Brda et al.*,** filed on June 24, 2024, in the Southern District of New York but later
183   removed to this District[5];

184   **2. *Meta's Chapter 7 bankruptcy action*,** filed on August 14, 2024, in the federal bankruptcy
185   court located in Nevada;[6]

186   **3. *Auxier v. SEC*,** which was filed on December 6, 2024, in the Western District of Texas
187   and amended on December 26, 2024; and, lastly,

188   **4. *Alpine Securities Corp. v. FINRA*,** is another key case that may result in FINRA ceasing
189   to exist.[7]

190           Although Plaintiff refrains from discussing every aspect of the foregoing cases, he still

191   submits they have generated considerable information greatly affecting this Case. For instance, on

192   March 14, 2025, the court in *Auxier* granted more time to the *pro se* plaintiffs to effect service.

---

[5] *See* https://casetext.com/case/sec-exch-commn-v-brda
[6] *See* https://www.nvb.uscourts.gov/case-info/mega-cases/meta-materials/
[7] *See* https://www.reuters.com/legal/us-supreme-court-allows-finra-proceedings-against-alpine-securities-2025-03-14/

193    In addition, Plaintiff highlights the following, related cases:[8]

| Date Filed | Case Name | Case No. | Jurisdiction | Status |
|---|---|---|---|---|
| 12/31/21 | Investors vs. Meta Materials Inc., et al. | 1:21-cv-07203-CBA-JRC | E.D.N.Y. | Closed |
| 01/26/22 | McMillan vs. Meta Materials Inc., et al. | 1:22-cv-00463 | E.D.N.Y. | Consolidated |
| 09/21/23 | Denton vs. Palikaras, et al. | A-23-878134-C | Eighth Jud. Dist. Ct., Clark Cnty., NV | Pending |
| 07/17/24 | Traudt vs. Rubenstein, et al. | 2:24-cv-00782 | D.C. VT | Pending |

194

195    **IV.    ARGUMENTS**

196

197    **A. Motions To Stay**

198    Courts have discretion to enter stays that promote judicial efficiency, and avoid

199    inconsistent rulings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Also, courts also grant

200    stays in securities actions when related SEC, and/or bankruptcy litigation may affect things. *SEC*

201    *v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980); *see also Bean,* and *Campbell,* supra.

202    Here, a stay is warranted as the related actions may clarify key legal, and/or factual issues

203    similar to those in this Action. Also, Plaintiff has not yet served any of the defendants due to him

204    having to reconsider his options, and obligations. Thus, a stay would serve *Justice*.

205    **B. Motions for Extension of Time**

206    As the key developments from the related actions affect this Case, *good cause* exists to

207    grant the Motion for Extension of Time. Courts often grant more time to movants due to delays

---

[8] The information above (in particular the "Status"-column) has not been easy to fully verify.

208  resulting from complex litigation, related and pending cases, etc. *See Efaw v. Williams*, 473 F.3d

209  1038, 1041 (9th Cir. 2007) where provided the following:

> Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after that 120-day period…. However, no court has ruled that the discretion is limitless. In making extension decisions under Rule 4(m) a district court may consider factors "like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service."

216  *Id.* (quoting *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir.1998)).

217  Accordingly, Plaintiff's Motion for Extension of Time should be granted.

## V.    CONCLUSION

220  In sum, despite being diligent, Plaintiff asks for empathy. *See Barnett v. Hargett*, 174 F.3d

221  1128, 1133 (10th Cir. 1999) quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)):

> The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

228  *Id.* (internal quotation marks omitted).

229  Lastly, this Motion is filed in good faith as no defendant would suffer prejudice since none

230  has been served (on this note, Plaintiff can not certify having served this Motion, as requested by

231  the Clerk). ECF No. 2.

## VI.    REQUEST FOR RELIEF

233  **WHEREFORE**, Plaintiff requests this Honorable Court to enter an order granting one or

234  several of the following:

235  A. **A stay of all proceedings** in this Case pending resolution of related litigation that materially affect this Case; and/or, in the alternative,

238  B. **An extension of time to effect service** and/or until the stay is lifted; and/or,

240  C. **Issue any other relief** warranted under these circumstances.

241                                                        **Respectfully submitted by**,

242                                                        Brad Davis
243                                                        /s/ Brad Davis
244                                                        4771 Sweetwater Blvd., #188
245                                                        Sugar Land, TX 77479
246                                                        Braddavis23@me.com

247                              <u>**CERTIFICATE OF SERVICE**</u>

248            **I HEREBY CERTIFY** that on this March 20, 2025, I filed foregoing document with the

249    clerk of court for the U.S. District Court, Northern District of Texas.


250                                                        **Respectfully submitted by**,

251                                                        /s/ Brad Davis

252                                **EXHIBIT A**

253            **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION**

254            Before the Court is *pro se* plaintiff's, BRAD DAVIS ("***Plaintiff***"), motion for stay, and/or,

255    in the alternative, motion for an extension to effectuate process of service (collectively, the

256    "***Motion***"). After having carefully considering the Motion, the record, and all relevant authorities

257    and therefore being fully advised in the premises, the Court finds that the Motion serves the ends

258    of *Justice*, and should be granted in full.


259            Accordingly, it is hereby **ORDERED AND ADJUDJGED** that the Motion is

260    **GRANTED**, and a stay is therefore now in effect pending the outcome of related litigation, and/or

261    until Plaintiff files any other papers requiring adjudication by the Court.


262                                    _____

263                                    Brian McKay, Magistrate Judge

264

265                                    Signed on this _____ day of _____, 2025.